IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTONIO D. FLETCHER-BEY,

       Plaintiff,

v.                                                      Case No. 23-cv-3514-NJR

ANTHONY WILLS, JOHN DOE #1,
JILLIAN CRANE, and
LATOYA HUGHES,

       Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Antonio D. Fletcher-Bey, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, he alleges deliberate indifference in the treatment of various physical ailments in violation of the Eighth Amendment. He also alleges a claim pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

Fletcher-Bey's Complaint also was labeled as a motion for temporary restraining order ("TRO")/preliminary injunction, seeking transfer to another facility and adequate medical care. His request for immediate relief was docketed as a separate motion (Doc. 14), and Defendants were ordered to respond. Defendants filed a response to the motion (Doc. 27), and Fletcher-Bey filed a reply brief (Doc. 34). On May 7, 2024, Defendants submitted supplemental medical records (Doc. 51), and Fletcher-Bey

1

submitted an additional supplement (Doc. 54) ten days later. The Court held an evidentiary hearing on June 6, 2024.

BACKGROUND

**A. Fletcher-Bey's Complaint and Request for Injunctive Relief**

Fletcher-Bey initially filed this action in state court, and the action was removed by Defendants Alisa Dearmond and Jillian Crane pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 (Doc. 1). After a review of the pleadings pursuant to 28 U.S.C. § 1915A, Fletcher-Bey was allowed to proceed on the following counts:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference claim against Anthony Wills for denying Fletcher-Bey access to physical therapy. |
| Count 2: | Eighth Amendment deliberate indifference claim against John Doe #1 and Jillian Crane for delaying Fletcher-Bey's access to his epidural injection, medications, and permits. |
| Count 3: | ADA claim for the failure to honor Fletcher-Bey's permits and provide him with assistive devices. |

In the Complaint, Fletcher-Bey alleges that he suffers from numerous ailments. As a result, he was prescribed multiple medications including: a Nasacort pump for allergies, Lipitor for high cholesterol, Lisinopril for high blood pressure, and Tramadol, Robaxin, and Gabapentin for nerve damage, muscle degeneration, and arthritis in his spine (Doc. 13, p. 2). To address his spinal issue, Fletcher-Bey also received physical therapy, a bottom bunk/gallery permit, air/crate mattress, and an abdominal binder/back brace. He also received a lower back L5S1 epidural steroid injection ("LESI") two to three times a year (*Id.*). While at Menard, however, Fletcher-Bey alleges he has

2

been denied a number of prescriptions and assistive devices. For instance, he has not received his Nasacort prescription and went without his Lipitor and Lisinopril prescriptions from May to June 2023 (*Id*.). Even when he has access to his medications, his receipt of the medications is often delayed due to staffing shortages at Menard (*Id*. at p. 3). At the time he filed his Complaint, Fletcher-Bey lacked access to his back brace/abdominal binder and special mattress (*Id*. at p. 2-3). He was also refused a bottom bunk/bottom gallery permit and a front cuff/waist chain permit (*Id*. at p. 3). As to his access to physical therapy, Fletcher-Bey alleges that he has not attended a physical therapy session since January 2023 (*Id*.). His LESIs have also been delayed (*Id*.).

In a status update, Fletcher-Bey reported receiving a dose of Lisinopril on November 28, 2023, but noted that his refills for Tramadol, Gabapentin, and Robaxin were still pending (Doc. 10). In January 2024, Fletcher-Bey informed the Court that he had not received a dose of Lisinopril since December 17, 2023, his last dose of Lipitor was October 22, 2023, and his last dose of Ultram/Tramadol was January 21, 2024 (Docs. 11, 12). In addition, he alleges has not received the correct dosage of his Tramadol and Neurontin prescriptions in over 11 months (*Id*.).

## B. Defendants' Response

In Defendants' response, they argue that Fletcher-Bey has received all medical care that has been prescribed except for care that he has specifically refused. Specifically, Angela Crain attested in her affidavit that Fletcher-Bey has permits for both ADA hearing aids and a vibrating watch (Doc. 27-1, p. 1). As to his medications, Crain stated that Fletcher-Bey is currently prescribed Gabapentin, Lipitor, Lisinopril, and Nasacort (*Id*.).

He refused his Robaxin prescription starting in November 2022 (Doc. 27-2). On August 22, 2023, Fletcher-Bey received an MRI for his complaints of shoulder pain (Doc. 27-3). There were no signs of fracture, dislocation, or any other issues requiring treatment (*Id.*). An abdominal ultrasound taken on September 15, 2023, also found no medical issues requiring treatment (Doc. 27-4).

As to Fletcher-Bey's physical therapy, he received a re-evaluation from a physical therapist on October 2, 2023 (Doc. 27-5). The therapist noted that Fletcher-Bey was unable to participate in the exercises due to his pain and was agreeable to discharge due to his inability to participate physically (*Id.*). He was referred to the nurse practitioner for reassessment of his pain (*Id.*).

Finally, as to Fletcher-Bey's scheduled LESI, Defendants acknowledge that he was scheduled for the injection on April 8, 2024, based on a July 2023 pain management evaluation (Doc. 27-1, p. 1). Prior to that scheduled injection, on November 22, 2023, Fletcher-Bey submitted a medical services refusal form (Doc. 27-6). He requested that all medical furloughs and outside appointments be canceled in order to lift his medical hold (*Id.*). This medical refusal form included "ultrasounds, [spinal epidural injections], audiology, [and] pain management." (*Id.*). As a result of that refusal, Angela Crain stated that all appointments, including Fletcher-Bey's appointment for his spinal injection on April 8, 2024, were canceled (Doc. 27-1, p. 2).[1]

---

[1] Defendants also argue that Fletcher-Bey failed to fully exhaust his administrative remedies prior to filing suit, but there remain disputes of fact as to whether Fletcher-Bey properly exhausted or was thwarted in his attempts at exhaustion (*See* Doc. 27, pp. 5-6; Doc. 1-2, pp. 18-19; Doc. 34, p. 3).

### C. Fletcher-Bey's Reply

As to his spinal injection, Fletcher-Bey alleges that he was scheduled to receive the injection at his appointment on July 10, 2023, but was informed that Jillian Crane called the specialist and stated the injection could not be administered at that time per Wexford Health Sources, Inc.'s collegial review (Doc. 34, p. 5). He does not deny that he requested his medical hold be lifted, but he argues that Defendants improperly delayed his injection for five months before he submitted the refusal (*Id*.).

As to his medications, Fletcher-Bey argues that he never refused his Robaxin and that he did not sign a refusal. The refusal form indicates that Fletcher-Bey refused to sign the form (Doc. 27-2, p. 1). He also argues that the Menard pharmacy report will show that he was prescribed Robaxin twice since the alleged refusal (Doc. 34, p. 5).

Fletcher-Bey also argues that he was unable to further pursue physical therapy due to the deterioration of his condition after Wills stopped his physical therapy. His Complaint alleges that after attending a physical therapy session in early 2023, the physical therapist informed him that Anthony Wills stopped all future sessions. As a result, Fletcher-Bey was only provided with printouts of exercises. Thus, when he was finally re-evaluated in October 2023, his condition had deteriorated. The notes from the reevaluation suggest that Fletcher-Bey's pain had increased since being in segregation for two weeks (Doc. 27-5, p. 1). He also had decreased mobility (*Id*.).

Fletcher-Bey also disputes that he failed to request additional permits from the prison. He points to a grievance dated December 5, 2022, which requested a special mattress, permits, and physical therapy (Doc. 1-2, p. 15-16). Fletcher-Bey also submitted

another grievance in June 2023 about his access to medical care and specialized items. The grievance noted that he submitted numerous requests to medical staff for medical care, including his medications and spinal injection (*Id*. at pp. 18-19).

### D. Medical Records

In advance of the evidentiary hearing, the Court directed Defendants to submit supplemental medical records regarding Fletcher-Bey's care. As to Fletcher-Bey's request for a steroid injection, medical notes leading up to his July appointment with the specialist, Dr. Gerson Criste, indicate that he was being sent for a pain management evaluation (Doc. 51-1, pp. 11, 13-14, 16, 21-22). The referrals are marked for a consult and/or evaluation for possible injection therapy (*Id*. at pp. 46-47). Further, the notes from Dr. Criste indicate that they discussed possible other treatments and determined that a repeat epidural steroid injection had previously helped Fletcher-Bey for approximately six months (*Id*. at p. 54, 23). Dr. Criste noted that Fletcher-Bey could repeat the injection every six months (*Id*. at p. 55). On July 15, 2023, the request for a steroid injection was sent for a referral order (*Id*. at pp. 23-24, 58-59). Nothing in the records indicate that Dr. Criste was told not to give a steroid injection at the appointment. After approval of the referral, on October 13, 2023, Fletcher-Bey was again referred to pain management for the LESI (*Id*. at pp. 32-33). A note in December 2023 indicates that Fletcher-Bey signed a medical refusal form in order to release his medical hold, canceling all subsequent furloughs including the appointment for the LESI (*Id*. at pp. 34-35).

As to Fletcher-Bey's access to physical therapy, on January 18, 2023, he attended a physical therapy evaluation (Doc. 51-1, p. 2). The medical records show that Fletcher-Bey

was only scheduled for a physical therapy evaluation (Doc. 51-1, p. 2). He received a medical order for one visit, and he was provided with a written copy of all exercises to use on his own (*Id*.). Fletcher-Bey attended another physical therapy evaluation on September 5, 2023, but he could not perform the exercises due to pain. Instead, it was recommended that Fletcher-Bey participate in skilled physical therapy two times a week (*Id*. at p. 30). On October 2, 2023, he was revaluated, was unable to complete any exercises due to pain, and agreed to be discharged from skilled physical therapy (*Id*. at p. 32).

### E. Evidentiary Hearing

On June 6, 2024, the Court held an evidentiary hearing and heard testimony from Fletcher-Bey, Angela Crain, and Dr. Glenn Babich.

#### 1. *Fletcher-Bey*

The Court first heard testimony from Fletcher-Bey. As to his back pain, Fletcher-Bey testified that he was originally scheduled to receive a spinal injection in July 2023, but staff at the spinal clinic informed him that he was not cleared for the procedure. As to his access to physical therapy, Fletcher-Bey acknowledged that he met with the physical therapist in January 2023. At that time, he was informed that he could not participate in physical therapy for security reasons, and the therapist printed out exercises for Fletcher-Bey to practice on his own. He was only able to do a few of the exercises due to the degenerative nature of his condition. When he was finally allowed to attend physical therapy, he could not participate because of his pain levels, and thus the therapy was canceled.

As to his medications, Fletcher-Bey testified that there are delays in renewing his prescriptions. He turns in the stickers from his medications to be refilled, but they do not get refilled right away. At the time of the hearing, he testified that he was only getting half a portion of Tramadol and half of his Neurontin. Fletcher-Bey noted that he was receiving medication for his high blood pressure, although he had delays in receiving the medication in the past. Fletcher-Bey later testified Menard was the first prison where he had to submit a refill request himself rather than the nurse submitting the refill for him. But Fletcher-Bey acknowledged that he understood it was his responsibility to submit the refill request when his medication was close to empty.

As to his request for permits, Fletcher-Bey testified that he previously had a back brace at Stateville, Lawrence, and Shawnee Correctional Centers. He had an air crate mattress and low gallery/low bunk permit at Stateville, but he never received a front cuff waist chain permit at any of the prisons where he was previously housed. He testified that he was going to receive a permit for front cuffing at Lawrence Correctional Center but transferred before he received it. He also admitted that he had not had a low bunk/low gallery or air crate mattress permits in over five years.

### 2. Angela Crain

Angela Crain, the healthcare unit administrator at Menard, also testified about Fletcher-Bey's medical care. Crain acknowledged that Fletcher-Bey had a permit for hearing aids and a vibrating watch but did not have any other permits. If Fletcher-Bey wanted to seek additional permits, he would have to meet with a provider and be evaluated for a specific assistive device. She also indicated that Fletcher-Bey presently

8

had prescriptions for Gabapentin/Neurontin, Lipitor, Lisinopril, and Nasacort. Crain noted that for medications that are allowed to be kept on person, the inmate is required to remove the renewal sticker from the prescription and place it on a piece of paper, similar to a nurse sick call, and turn the renewal request into the nurse sick call box. For those medications that are administered directly by the nurse, the nurse is responsible for obtaining the refill of that medication. The nurse would place the inmate for either an appointment or a jacket review by the provider in order to renew the medication.

Crain also noted that Fletcher-Bey was scheduled to receive a LESI for his lower back in April 2024, but he signed a refusal for medical services in order to be eligible for a transfer. The medical refusal led to the cancelation of his scheduled injection.

### 3. Dr. Glenn Babich

Dr. Glenn Babich is the regional medical director for Wexford Health Sources, Inc. and oversees the healthcare provided by the physicians, nurse practitioners, and physician assistants at the prisons. He also sees some patients by telemedicine and onsite visits. He reviewed Fletcher-Bey's medical file prior to the hearing. As to Fletcher-Bey's medication, Dr. Babich testified that he currently has a prescription for Lisinopril and Lipitor. Both medications are kept on his person and have been dispensed to him.

Fletcher-Bey also receives Tramadol, a synthetic narcotic, for pain. Although the medication is usually used for short term pain control, it can be used to treat chronic pain if all other medications have proven ineffective. It is addictive and not as reliable for chronic pain. Dr. Babich acknowledged that Fletcher-Bey currently had a prescription for Tramadol, which he has been receiving for over one year. He receives the medication for

degenerative disc disease in his lower back. Dr. Babich testified that treatment for Fletcher-Bey's back condition can include anti-inflammatory medications, physical therapy, and pain medications. Dr. Babich also testified that the muscle relaxant, Robaxin, which Fletcher-Bey was previously prescribed, is used for acute muscle injury for only short periods of time. The benefit of this type of medication is short lived, lasting only one week, and thus it is not ideal for long-term use. Although Dr. Babich stated that he would not normally prescribe the three medications Fletcher-Bey previously received together (*i.e.* the Gabapentin, Tramadol, and Robaxin), they can be used as a bridge until his next steroid injection.

As to physical therapy, Dr. Babich testified that therapy can help improve function and maintain the function Fletcher-Bey already had. But Dr. Babich noted that Fletcher-Bey withdrew from therapy and failed to participate in the home exercise program. As to Fletcher-Bey's requested permits, Dr. Babich testified that he does not normally issue air crate mattresses because they do not usually work and break down often. He also noted that long-term use of a back brace or abdominal binder can cause the muscles to weaken and aggravate an individual's condition.

As to Fletcher-Bey's back injection, Dr. Babich testified that he was referred to an outside provider for a recommendation regarding pain management. The outside provider made a recommendation for the injection and that recommendation is sent back to the site provider. The site provider then agreed with the recommendation and submitted a request for the injection.

10

Dr. Babich recommended to Fletcher-Bey that he try physical therapy again in order to obtain some improvement in his condition. He recommended that Fletcher-Bey stay with physical therapy for at least three months before determining whether there was any benefit from the therapy. He also recommended trying the steroid injection and possibly pain medications. But Dr. Babich testified that muscle relaxants would not provide Fletcher-Bey with any additional benefit and would be risky when combined with his other pain medications.

### F.  Supplemental Briefing

After the evidentiary hearing, the Court received supplemental briefings from the parties. In his supplement, Fletcher-Bey for the first time noted that he was diagnosed with multiple sclerosis (Doc. 57, p. 1). He pointed to an authorization form dated May 17, 2022, for an MRI of his spine for multiple sclerosis (*Id*. at p. 3). Fletcher-Bey also argued that his placement at a maximum-security facility with lockdowns limited his out-of-cell time. He sought transfer to another facility where his medical needs could be met.

The Court ordered Defendants to respond to Fletcher-Bey's supplement, specifically addressing Fletcher-Bey's claim that he was diagnosed with multiple sclerosis. Jillian Crane filed a response noting that Fletcher-Bey was never diagnosed with multiple sclerosis, and the notation on the MRI authorization was a clerical error (Doc. 59). A previous x-ray noted "multilevel degenerative changes, disc space narrowing, *endplate sclerosis*, and anterior osteophyte formation." (Doc. 59-1) (emphasis added). When referred for an MRI, Dr. David clearly wrote endplate sclerosis (*Id*.). But in approving the request for an MRI, endplate was transcribed as multiple. Fletcher-Bey

filed a reply on June 27, 2024 (Doc. 60). To the extent his brief discusses the activities of non-defendant staff members at Menard Correctional Center, the Court finds his allegations unrelated to the claims in this case. And, to the extent that he takes issue with the testimony of Dr. Babich and Crane, Fletcher-Bey had the opportunity to cross-examine the witnesses at the hearing.

## LEGAL STANDARDS

A temporary restraining order may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

12

As to the first hurdle, the Court must determine whether a plaintiff's claim "has some likelihood of success on the merits." *Mays v. Dart,* 974 F.3d 810, 822 (7th Cir. 2020). Once a plaintiff has met his burden, the Court must weigh "the competing harms to the parties if an injunction is granted or denied and also consider[] the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . " and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A request for a mandatory injunction like the one requested by Fletcher-Bey, which requires "an affirmative act by the defendant" is "ordinarily cautiously viewed and sparingly issued." *Mays*, 974 F.3d at 818 (quoting *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

Simply put, Fletcher-Bey fails to demonstrate that he is entitled to the injunctive relief he seeks. Specifically, he fails to demonstrate a likelihood of success on the merits of his claims. *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (explaining that movant's "showing of likelihood of success on the merits must be strong"). Although Fletcher-Bey argues that he is not receiving proper medical care, the evidence presented in the briefs

13

and at the evidentiary hearing demonstrates that Fletcher-Bey is receiving medical care. He may disagree with that course of treatment, but his simple dissatisfaction "does not give rise to a constitutional violation unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted).

There is simply no evidence to suggest that Fletcher-Bey's current medical treatment is blatantly inappropriate. He has received a number of treatments for his back pain, and he was sent for physical therapy on multiple occasions. He was sent for a pain management referral and prescribed an epidural steroid injunction. But the evidence suggests that Fletcher-Bey failed to participate in those prescribed treatments.

Fletcher-Bey was initially sent for physical therapy in January 2023. Although he argues that Warden Wills inappropriately ended that physical therapy, the medical records note that he was referred for only one visit to the physical therapist (Doc. 51-1, p. 2). He was provided with exercises to complete on his own (*Id.*). In September 2023, he received another physical therapy evaluation and was prescribed skilled physical therapy (*Id.* at p. 30). But Fletcher-Bey ultimately claims that the physical therapy was too painful, and he was not able to participate or complete the exercises. Dr. Babich testified that Fletcher-Bey withdrew from therapy and also failed to participate in the home exercises previously provided to him. Although Dr. Babich testified that, in his medical opinion, physical therapy offered the best chance for maintaining function and reducing

14

pain, the evidence suggests that Fletcher-Bey has chosen not to participate in the doctor's prescribed treatment.

Similarly, Fletcher-Bey was referred to pain management and prescribed a LESI, but he has signed a medical refusal form that prevents him from receiving the injection. In February 2023, Fletcher-Bey received a medical referral to pain management for possible injection therapy (Doc. 51-1, pp. 46-47). Although he testified that he believed he would receive the injection at that appointment, the records clearly indicate that his referral was only for a consultation (*Id.*). The doctor discussed other treatment options and ultimately determined that a repeat LESI would be a reasonable option (*Id.* at p. 54).

Despite Fletcher-Bey's claims that he should have received the injection at that initial appointment, Dr. Babich testified the pain management doctor only offered a recommendation. That recommendation then had to be approved by Wexford staff before Fletcher-Bey could receive the injection. The injection was approved, but before the scheduled appointment, Fletcher-Bey signed a medical refusal form stopping all outside medical care. Thus, it is Fletcher-Bey's own actions that are preventing him from receiving the injection he requests. There is simply no evidence that he is being denied care due to any deliberate indifference on the part of any Defendant.

Fletcher-Bey raises additional concerns about the healthcare at Menard, taking issue with his lack of permits and consistent prescriptions. But he is receiving all of the assistive devices he is currently prescribed, including hearing aids and a vibrating watch. Although he alleges that Defendants have been deliberately indifferent in failing to provide him with an air crate mattress, low gallery/low bunk permit, and front cuff

permit, he acknowledged at the evidentiary hearing that he does not currently have permits for those items. He testified that his permits for an air crate mattress and low gallery/low bunk expired over five years ago, and he was never issued a front cuff permit. Further, Dr. Babich testified that the items he seeks would not help his condition. Thus, there is no evidence of deliberate indifference as to his assistive devices.

Similarly, Fletcher-Bey currently has access to all of the medications that are prescribed to him. Angela Crain testified that Fletcher-Bey has prescriptions for Gabapentin, Lipitor, Lisinopril, and Nasacort. Although there is some dispute as to whether he was previously prescribed Robaxin, Dr. Babich testified that the muscle relaxant is only prescribed for short periods of time and is not ideal for long-term use. Fletcher-Bey testified to some delays in receiving his medication but admitted that he is currently receiving all prescribed medications. To the extent he believes that he is not receiving the proper dosage of Tramadol and Neurontin, he has avenues to discuss his concerns with his providers. There is no evidence suggesting that any provider is acting with deliberate indifference.

Finally, the Court notes that Fletcher-Bey's requested relief is a transfer to another prison. Specifically, he requests to be transferred from Menard, a maximum-security prison, to a moderate, medium security facility (Doc. 1-2, p. 5). That request, requiring the Court to order prison officials to change Fletcher's Bey's security level classification and transfer him, requires an affirmative act by Defendants. Such a request is "cautiously viewed and sparingly issued." *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quoting *Jordan v. Wolke*, 593 F.2d 722, 774 (7th Cir. 1978)). The Court is hesitant to

intrude upon the day-to-day operations of the prison because prison officials are in the best position to make decisions that impact the day-to-day operations of their facilities, including placement decisions and security level classifications. *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (discouraging involvement of federal courts in daily operations of prisons). There is simply no evidence that Fletcher-Bey will suffer irreparable harm absent a transfer or his other requests for additional care. He has access to medications and access to a LESI should he withdraw his medical refusal. He also has the opportunity to participate in physical therapy, an option he rejected. But Dr. Babich testified that physical therapy was the best option for retaining function and possibly improving his condition. Fletcher-Bey has all of these options available to him at Menard Correctional Center; there is simply no evidence warranting a transfer at this time. Nor is there evidence that an injunction is required to obtain additional medical care. Thus, Fletcher-Bey fails in his burden of demonstrating that he is entitled to injunctive relief.

## CONCLUSION

For the reasons stated above, Fletcher-Bey's motion for temporary restraining order (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  July 1, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**